UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re

JODELL M. ALTIER,

    Debtor.

_____/

CASE NO. 6:15-bk-01838-KSJ

CHAPTER 7

GOSHEN MORTGAGE, LLC

    Plaintiff,

v.

JODELL M. ALTIER

    Defendant.

_____/

ADV. NO.: 6:15-ap-00156-KSJ

GENE T. CHAMBERS,

    Plaintiff,

v.

JODELL M. ALTIER, JENNIFER E.
SANDMAN and JILL A ALTIER, as
Successor Co-Trustees of the ALTIER
FAMILY IRREVOCABLE TRUST U/A
DTD 7/9/2002, GRANDE LEGACY
GROUP (A Texas Joint-Stock Company)
of Orange County, Florida, and JOSEPH
E. ALTIER, as Trustees of Orange County, Florida,

    Defendants.

_____/

ADV. NO.: 6:16-ap-00013-KSJ

## MOTION TO SUBSTITUTE AS COUNSEL FOR GRANDE LEGACY GROUP

**GRANDE LEGACY GROUP** ("GLG"), through its sole shareholder, officer and director, and by and through its undersigned counsel, pursuant to 11 U.S.C. § 105(a) and Local Rule 2091-2(d), seeks to substitute Justin M. Luna, Esq. and the Law Firm of Latham, Shuker,

Eden & Beaudine, LLP as sole counsel of record for GLG in the above-captioned action and replace Jonathan Bull, Esq. and The Liberty Law Team, LLC, and in support thereof, states as follows:

**Background**

1.      GLG is a Texas joint-stock company formed in September 2013.

2.      The "Articles of Incorporation" of GLG expressly state that the corporation has only 1,000 authorized and outstanding shares (the "Articles"). The Articles also state that the lawful possessor of the issued stock certificate shall be construed to be the true and lawful owner of the shares.

3.      The title of the Articles of GLG specifically states "Bearer Shares". A copy of the Articles is attached hereto as **Exhibit "A."**

4.      The sole evidence of any ownership interest in GLG is based on that certain "Stock Certificate Shares of Grande Legacy Group" (the "Bearer Shares Certificate"). A copy of the Bearer Shares Certificate is attached hereto as **Exhibit "B."**

5.      The Bearer Shares Certificate evidences the ownership interest in the 1,000 shares of GLG, which again states, "Bearer Shares."

6.      The Bearer Shares Certificate also states that the holder of the Stock Certificate is the owner of One-Thousand (1000) shares of GLG.

7.      Prior to the Petition Date, Jodell Altier (the "Debtor"), held the Bearer Shares Certificate.

8.      On April 18, 2016, the Trustee filed her motion for turnover seeking to direct the Debtor to turnover the Bearer Shares Certificate (the "Turnover Motion") (Doc. No. 89).

9.      In the Turnover Motion, the Trustee confirmed that the Bearer Shares Certificate

states, "such that any party holding the physical certificate is the sole owner of all 1,000 shares of the Company." Paragraph 6, Turnover Motion.

10.    The Debtor did not oppose the Turnover Motion.    No other party in interest opposed the Turnover Motion.

11.    On June 6, 2016, the Court granted the Trustee's Turnover Motion (the "Turnover Order") (Doc. No. 100).    A true and correct copy of the Turnover Order is attached hereto as **Exhibit "C."**

12.    Paragraph 2 of the Turnover Order expressly states, "Debtor shall turn over possession of the original "bearer shares" stock certificate for all 1,000 shares of Grande Legacy Group to Gene T. Chambers, Chapter 7 Trustee."

13.    At a hearing on June 9, 2016, the Debtor presented the Trustee a document purporting to be the original Bearer Shares Certificate.

14.    Upon inspection later by the Trustee, it was discovered that the document was a color copy.

15.    At the deposition of the Debtor on June 23, 2016, taken by counsel for Goshen Mortgage, LLC ("Goshen"), the Debtor testified she still had the original at her home.

16.    On June 29, 2016, the Trustee filed her motion to compel the Debtor to comply with the Turnover Order (the "Motion to Compel Turnover") (Doc. No. 109).

17.    On July 14, 2016, the Court entered an order granting the Motion to Compel Turnover (Doc. No. 125).

18.    The original Bearer Shares Certificate was subsequently turned over by the Debtor to the Trustee.

19.    On July 14, 2016, the Court held an auction (the "Auction") for certain assets of

the estate, which included, *inter alia*, the Bearer Shares Certificate and any and all of the Trustee's interest in GLG (the "Assets").

20.     At the Auction, Goshen and Mr. Altier made bids for the Assets.

21.     Goshen was the highest and winning bid for the Assets, which included the Bearer Shares Certificate, with Goshen paying $185,000.00 to the estate. This was confirmed in the order approving the sale (the "Sale Order") (Doc. No. 123).

22.     On August 10, 2016, the Trustee and Goshen closed on the sale of the Assets. A true and correct copy of the Bill of Sale and Assignment is attached hereto as **Exhibit "D."**

23.     That same day, Goshen took possession of the Bearer Shares Certificate for GLG.

24.     On August 17, 2016, Mr. Bill Bymel, on behalf of Goshen Mortgage REO, LLC, as the sole shareholder of GLG, took affirmative action to: (i) remove any and all persons seeking to act on behalf of GLG; (ii) appoint himself as the sole director and officer of GLG; and (iii) adopt by-laws for the corporation. A true and correct copy of the Resolution and By-Laws are attached hereto as **Exhibit "E."**

25.     On August 18, 2016, the Court entered an order sustaining the objections of the Trustee and Goshen to the Debtor's claims of exemption related to her alleged homestead, holding that GLG is "treated as a corporation" pursuant to 11 U.S.C. §101(9)(a)(iii) (Doc. No. 147).

26.     Mr. Bymel, as the sole director and officer of GLG, now seeks to replace current counsel of record for GLG with the undersigned counsel in the instant action.

27.     For all the foregoing reasons, the Motion should be granted.

**WHEREFORE,** Mr. Bymel, as the sole director and officer of GLG, respectfully requests that this Court enter an order: (i) compelling Mr. Bull and The Liberty Law Team to

withdrawal as counsel of record for GLG; (ii) allowing Justin M. Luna, Esq. and the Law Firm of

Latham, Shuker, Eden & Beaudine, LLP to substitute as counsel of record for GLG; and (iii)

granting such other and further relief as the Court deems proper.

   **RESPECTFULLY SUBMITTED** this 26th day of August, 2016.

       /s/ Justin M. Luna
       Justin M. Luna, Esq.
       Florida Bar No. 0037131
       jluna@lseblaw.com
       Daniel A. Velasquez, Esq.
       Florida Bar No: 00098158
       dvelasquez@lseblaw.com
       **Latham, Shuker, Eden & Beaudine, LLP**
       111 N. Magnolia Ave., Suite 1400
       Telephone: (407) 481-5800
       Facsimile: (407) 481-5801
       bknotice1@lseblaw.com
       *Attorneys for Grande Legacy Group*

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re                                               CASE NO. 6:15-bk-01838-KSJ

JODELL M. ALTIER,                                   CHAPTER 7

    Debtor.

_____/

GOSHEN MORTGAGE, LLC                                ADV. NO.: 6:15-ap-00156-KSJ

    Plaintiff,

v.

JODELL M. ALTIER

    Defendant.

_____/

GENE T. CHAMBERS,                                   ADV. NO.: 6:16-ap-00013-KSJ

    Plaintiff,

v.

JODELL M. ALTIER, JENNIFER E.
SANDMAN and JILL A ALTIER, as
Successor Co-Trustees of the ALTIER
FAMILY IRREVOCABLE TRUST U/A
DTD 7/9/2002, GRANDE LEGACY
GROUP (A Texas Joint-Stock Company)
of Orange County, Florida, and JOSEPH
E. ALTIER, as Trustees of Orange County, Florida,

    Defendants.

_____/

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true copy of **MOTION TO SUBSTITUTE AS COUNSEL FOR GRANDE LEGACY GROUP,** together with all related exhibits, has been furnished electronically to those parties entitled to receive electronic notice in this case, and/or by U.S. First Class, postage prepaid mail to: Jonathan B. Alper, Esq., 274 Kipling Court,

Heathrow, Florida 32746, via email to: jalper@alperlaw.com, Grande Legacy Group, c/o Darrin C. Lavine, as Trustee for Grande Legacy Group, 2170 W. SR 434, Suite 260, Longwood, Florida 32779, via email to: dlavine@titanreservegroup.com; Grande Legacy Group, c/o Darrin C. Lavine, as Trustee for Grande Legacy Group, 2507 Roat Drive, Orlando, Florida 34786-7359; Gene T. Chambers, c/o Michael A. Nardella, Esq., Nardella & Nardella, PLLC, 250 East Colonial Drive, Suite 102, Orlando, Florida 32801, via email to mnardella@nardellalaw.com and akeppel@nardellalaw.com; Jennifer E. Sandman, as Trustee of the Altier Family Irrevocable Trust, 13424 Swan Sea Avenue, Windermere, Florida 34786-7359; and Jill A. Altier, as Trustee of the Altier Family Irrevocable Trust, 2507 Roat Drive, Orlando, Florida 32835; and Jonathan Bull, Esq., The Liberty Law Team, 172 W. Warren Avenue, Longwood, Florida 32750 and via email to jon@libertylawteam.com this 26th day of August 2016.

/s/ Justin M. Luna
Justin M. Luna, Esq.

# TEXAS JOINT-STOCK COMPANY
### (Bearer Shares)
## Of
# GRANDE LEGACY GROUP

The Creator hereby offers to bargain or exchange, in trade, Ten Dollars ($10.00) and 1,000 shares of stock for the real and/or personal property of the Exchangor or Exchangors. The shares of stock issued to the Exchangor or Exchangors represents full and adequate consideration or full value.

The Exchangor or Exchangors for Ten Dollars ($10.00) and other valuable considerations of shares of stock, the receipt of which is hereby acknowledged, does hereby bargain, assign, convey, exchange and deliver unto the Creator, who holds in the Joint-Stock Company name pursuant to the terms of this Contract and obligations as set forth therein, certain real and/or personal property previously owned by the Exchangor. Upon completion of the exchange transaction, the Creator is no longer an active participant and thereby resigns with no further responsibilities or liabilities.

The Exchangor or Exchangors as Shareholder(s) hereby constitute(s) and appoint(s) the Trustee(s) and Successor Trustee(s) to be, in fact, the Trustee(s) of the Joint-Stock Company (hereinafter referred to as "Company"), hereby created and established. The exclusive right to appoint Trustee(s) and Successor Trustee(s) only vests with the original Exchangor or Exchangors as Shareholder(s). The property will be immediately assigned, conveyed and delivered unto said Trustee(s), in an irrevocable contract, who hold title in fee simple and control as joint tenants and to collectively act by virtue of this Contract as a Board of Trustee(s) under the collective name herein designated which are certain properties, business projects, operations under way or contemplated, dealing in equities, formulae, entities, patents, copyrights, business goodwill, desired to be engaged in by said Trustee(s).

The name and other things of value to constitute a company having principal place of business and domicile in the Country of the United States of America, County of Travis, State of Texas. This Contract and Joint-Stock Company is interpreted and construed under the laws of the State of Texas.

The named Trustee(s), for themselves and their successors do hereby accept the conveyance and acknowledge delivery of all the property specified, together with all the terms of the Company herein set forth, agreeing to conserve and improve the Company to invest and reinvest the funds of said Company in such manner as will increase the financial rating of the Company exercising their best judgment and discretion, in accordance with the Company minutes, making distribution of portions of the proceeds and income as in their discretion, and according to the minutes, and final liquidation distributing the assets to the stockholders, if any, as their contingent right may appear; and in all other respects administering said Company in good faith strictly in conformity hereto.

**Exhibit "A"**

Trustee(s) shall be not less than one (1) in number may be increased for practical reasons beneficial to the Company. The Trustee(s) herein mentioned by name, or their successors elected to fill vacancies, shall hold office, have and exercise collectively the exclusive management and control of the Company's property and business affairs without any consent of stockholders.

Provided, however, that a Trustee may resign or be removed from office by a resolution of the Board of Trustees unanimously concurred whenever in their said opinion Trustee shall have been guilty of fraud, malfeasance in office.

Provided further, that in the event of death, removal from office or resignation of a Trustee, the initial Exchangor or Exchangors shall appoint or elect a successor. No Trustee shall resign, when he is the last remaining Trustee, until after this Company is terminated according to the terms of this Contract or unless a Successor Trustee is first named. Should the entire Board of Trustees become vacant and the Exchangors are deceased, a court of competent jurisdiction shall appoint one Trustee, who in turn shall liquidate, dissolve and terminate this Company under the terms governing the Contract.

The signing and acknowledging of the minutes of this Contract by such Trustee or Trustees, elected or appointed, shall constitute their acceptance of this Company; and the Company property, assets and profits thereof shall immediately vest, in fee simple without any further act or conveyance.

By a regular act of the Trustee(s) they may provide for meetings at stated intervals without notice and special meetings may be called at any time by one (1) or more Trustees upon three days written notice. At any regular or special meeting a majority of the Trustees shall constitute a quorum for conducting business, PROVIDED, affirmative action may only be had upon a majority vote of the Trustees, whether present or absent, except that at special meetings called for a special purpose the majority present may affirmatively act in emergency matter.

Trustee(s)' powers shall be to continue in business, conserve the property, commercialize the resources, extend any established line of business in industry or investment, as herein specially noted, at their discretion for the benefit of this Company such as, viz: buy, sell or lease land for surface or mineral rights; buy or sell mortgages, securities, bonds, notes, leases of all kinds, contracts or credits of any form, patents, trademarks or copyrights; buy, sell, or conduct mail-order business, or branches thereof; operate stores, shops, factories, warehouses, or other trading establishments or places of business, of any kind; allocate funds derived from any source for charity, religion, education, research, accumulating, or other purposes, whether for immediate or future application, to be managed by specified Trustee, Trustees, or others, as designated by any type of real estate, improved or unimproved; advertise different articles or business projects; borrow money for any project, pledging the Company property for the payment thereof; hypothecate assets, property, or both; own stock in, or entire charters of corporations or other properties, companies or associations as they may deem advantageous.

Resolutions of the Board of Trustee(s) authorizing a special thing to be done shall be evidence that such act is within its power. Anyone lending or paying money to the Board

<u>Exhibit "A"</u>

of Trustee(s) shall not be obliged to see the application thereof. All funds paid into the treasury are and become a part of the corpus of the Company.

The Company shall have authority to provide itself with operating funds through commercial loans, directly secured by assets or income of the Company or become the owner and/or the Beneficiary of any insurance policy for any purpose.

The Trustee(s) and Successor Trustee(s) shall serve without fidelity bonds.

The Trustee(s) shall regard this instrument as their sufficient guide, supplemented from time to time by resolutions of their board covering contingencies as they arise and recorded in the minutes of their meetings as deemed expedient and consistent with the orderly conduct of business.

The Trustee(s) shall have the exclusive power to construe the meaning and intent of this contract or instrument and the Trustee's(s') construction shall be conclusive, legally binding and will govern. The Trustee's(s') construction will be the same as the intention of all parties as expressed throughout the entire contract or instrument.

The Trustee(s) may in their discretion elect among their number a President, Secretary and Treasurer, or any other officers they may deem expedient for proper functioning. Any Trustee(s) may hold two, or more, offices simultaneously, their duties being such as are usual or are prescribed. They may employ agents, executives, or other employees or designate third persons to hold funds whether personal or real property, for any specific purposes.

The Trustee(s) shall fix and pay compensation of all officers, employees or agents in their discretion, and may pay themselves such reasonable compensation for their services as may be determined by the Board of Trustee(s).

The Trustee(s) may appoint from their number one or more Executive Trustee(s) who shall be given such powers as the Company minutes of appointment shall define.

The Trustee(s) shall, in the capacity of Trustee(s) and not individually, assume only such liability as may attach to said Company property assets. This Trustee liability shall not in any manner jeopardize their individual or personal holdings and for any losses they should suffer for any reason through services, they shall be reimbursed from the Company property to the same extent as would non-interested persons. The assets and property of this Company are not subject to the individual liability of Trustee(s), Officer(s) or Shareholders.

It is expressly declared that a Joint-Stock Company is hereby created as a legal separate entity, that neither the Trustee(s) or officers personally or individually, present or future, have or possess any beneficial interest in the property or assets of said Company, nor shall they be personally liable hereunder, as partners or otherwise; that no Trustee shall be liable for the act or omission of his or her Co-Trustee, or any other person, whatsoever, whether employed by such Trustee or not or for anything other than his own,

Grande Legacy Group
3-15

Exhibit "A"

personal breach of trust. The Shareholder(s) may be liable for the debts and judgments of the Company.

For convenience the shares of stock used for distribution shall be divided into One Thousand (1,000) shares. They shall be non-assessable, non-taxable and non-negotiable and the lawful possessor shall be construed to be the true and lawful owner thereof. The initial stockholders will hold the shares as tenants in common and at the death or termination of the holder thereof the shares will become null and void. No new shares of stock may be issued or no reissue of shares of stock is authorized after initial issue becomes null and void.

Death, insolvency, or bankruptcy of any stockholder, or the transfer of his or her stock by gift, devise or descent, shall not operate as a dissolution of this company, or in any manner affect the Company or its operation or mode of business. Ownership of shares shall not entitle the holder to any legal title or equitable title in or to the Company or property, nor any undivided interest therein, nor in the management or voting rights thereof, nor shall the death of a holder entitle his heirs or legal representatives to demand any partition or division of the property of the company, nor any accounting. The rights of the stockholders in persona are limited to merely a claim against the Trustee(s) to carry out this Contract.

This Contract shall continue for a period of perpetuity from date, unless the Trustee(s) shall unanimously determine an earlier date. The Trustee(s) may at their complete discretion, because of threatened depreciation in values, or other good and sufficient reason, liquidate the assets, distribute and close the Company at an earlier date determined by them. The Company assets shall then be proportionately and in a pro rata manner distributed to the stockholders. In the event this instrument has been recorded with the Recorder of Deeds, they shall then file with said recorder a notice that the Company shall cease and terminate; and thereupon the Trustee(s) shall automatically be further discharged hereunder.

The purport of this instrument is to convey property to the Trustee(s) to constitute a Joint Stock Company and is held in fee simple by the Trustee(s), in joint tenancy for the duration hereof, and to provide for a sane and economical administration.

The property exchanged shall be detailed and described in an appropriate schedule on the books of the Trustee(s), and the judgment of the Trustee(s) regarding the value of the property acquired or services rendered shall be deemed conclusive. Any person, firm, corporation or other entities acquiring shares of stock in this Company, assents to, accepts, and approves all the terms, conditions, and agreements contained in the Contract, and all minutes of resolutions thereof, and from date so received, the Contract shall have like binding force and effect on them as if they were one of the original parties thereof.

The shares of stock herein shall be bearer shares. The holder of said bearer shares shall hold the shares without any further action or notification by the shareholder to the company, trustee(s) or any other private or public entity. The bearer shares of stock may be transferred to any other person by sale, gift or exchange and no further action or notification is required. The Company or Trustee(s) must not maintain any form of

Grande Legacy Group
4-15

<u>**Exhibit "A"**</u>

recording or registration of stock ownership or transfers. The person who is the holder of the shares of stock shall be deemed to be and treated as the absolute owner thereof for all purposes.

The Company indenture or articles, minutes, books, records or any other documents(s) may be irrevocably transferred to any other designated person whether in the United States or foreign country. The Company must not maintain a resident or registered agent, address or phone number. No information concerning Company or its activities may be given in any legal or legitimate discovery proceedings by any Trustee(s), officer(s) or shareholder(s) except the name and address of the person(s) in possession of said records and documents of the Company.

In the event the outstanding shares shall fall below the amount originally issued as outstanding, then the Trustee(s) may not issue new stock certificates.

Nothing herein contained shall be construed to authorize the Company to issue stock certificate shares in excess of the number herein provided, nor for a nominal value at variance with the provisions hereof.

The initial investment of money or property by the Exchangor or Exchangors shall constitute a "fixed" investment irrevocable, and nothing contained herein shall constitute a right or power of any Exchangor or Exchangors herein as Stock Certificate Holder(s) to in any manner vary his or her original investment, whether by increase or decrease of the original investment in the Company.

The Stock Certificate Holders shall not be liable for any assessment, and the Trustee(s) shall have no power to bind the Stock Certificate Holders personally. All persons or entities dealing with or having any claim against Trustee(s) or any officer or agent of the Company shall look only to the funds and property of the Company for the payment of any debt, claim, damage, judgment, or decree, or any money or thing that may become due or payable in any way, whether founded on contract or tort or equity, and the Stock Certificate Holders shall not be personally or individually liable hereunder until all funds and assets of the Company are depleted.

Trustee(s) may from time to time declare and pay out of net earnings or income received by them such distributions as they in their sole discretion deem proper and advisable. The Shareholders receive these earnings or income as a contingent income right only and not as a vested income right.

Notice is hereby given to all persons, companies, entities or corporations extending credit to, contracting with, or having claims against this Company or the Trustee(s) hereof, that they must first look to the funds and property of the Company or the Trustee(s) thereof, for the payment or for settlement of any debt, tort, damage, judgment or decree, or for any indebtedness which may become payable hereunder; that the officers or agents are mere employees and not personally liable when dealing with the company properties or matters. If the debt or judgment is not satisfied with Company funds or property, then the Shareholders may be liable.

**Exhibit "A"**

If any provisions of this Contract shall be found to be invalid for any reason, the remaining provisions shall nevertheless be carried into effect.

Nothing herein contained shall be construed as in intent to evade or to contravene any law, nor delegate to Trustee(s) any special powers belonging exclusively to franchise of incorporation.

IN WITNESS WHEREOF the Exchangor(s) and Creator hereof, for themselves, have hereunto set their hands and seals in token and recognition of the conveyance, delivery and acceptance of property, assets, or other things and the obligations and duties as herein assigned to Trustee(s) of said company and assent to all stipulations herein as imposed and expressed.

_____ (seal)
Joseph E. Altier
Exchanger/Creator

_____ (seal)
Jodell M. Altier
Exchanger/Creator

STATE OF FLORIDA            §
                            §
COUNTY OF ORANGE            §

I, _Rose Butts_____ a _Notary_____,
being an officer authorized by laws of Florida to administer oaths, do hereby certify that Joseph E. Altier, Exchanger/Creator of Grande Legacy Group, appeared before me this day and acknowledged under oath that he signed, sealed and delivered the above and foregoing Joint-Stock Company for the uses and purposes therein set forth on the _13_ day of _September_, 2013.

SUBSCRIBED AND SWORN before me by the said Exchanger/Creator on the _13_ day of _September_, 2013 at _RBi1 Bank_, _Ccoee FL_

TO CERTIFY WHICH witness my hand and seal of office.

_Rose Butts_____
Printed Name

_Rose Butts_____
Official Signature
Notary Public in and for
The State of _Florida_

My Commission Expires: _June 13, 2016_

ROSE BUTTS
Notary Public, State of Florida
Commission# EE 187815
My comm. expires June 13, 2016

**Exhibit "A"**

STATE OF FLORIDA                     §

COUNTY OF ORANGE                     §
                                     §

I, _Rose Butts_____ a _Notary_____,
being an officer authorized by laws of Florida to administer oaths, do hereby certify that
Jodell M. Altier, Exchanger/Creator of Grande Legacy Group, appeared before me this
day and acknowledged under oath that her signed, sealed and delivered the above and
foregoing Joint-Stock Company for the uses and purposes therein set forth on the _13_
day of _September_ 2013.

SUBSCRIBED AND SWORN before me by the said Exchanger/Creator on the _13_ day
of _September_____, 2013 at _BBT Bank____, _Ocoee FL____

TO CERTIFY WHICH witness my hand and seal of office.


_Rose Butts_____
Printed Name

                                    _Rose Butts_____
                                    Official Signature
                                    Notary Public in and for
                                    The State of _Florida_

                                    My Commission Expires: _June 13, 2016_

**ROSE BUTTS**
Notary Public, State of Florida
Commission# EE 187815
My comm. expires June 13, 2016

**Exhibit "A"**

**No. 1**          **STOCK CERTIFICATE**          **1000 Shares**

Shares

(Bearer Shares)

OF

**GRANDE LEGACY GROUP**

The Joint-Stock Company Indenture dated the ___13___ day of ___SEPTEMBER___, 2013 creates GRANDE LEGACY GROUP, owner of the corpus thereof and managed through Trustee(s) designated in the Indenture Articles comprising of One-Thousand (1000) uniform shares in said Joint-Stock Company which are authorized for issue.

THEREFORE, the Trustee(s) do hereby certify that the holder of the Stock Certificate is the owner of One-Thousand (1000) shares. The Contingent Rights hereby conveyed consist solely of income as distributed by the action and sole discretion of the Trustee(s), and upon termination and liquidation, the distribution of the remaining assets of the said Joint-Stock Company. At the death or termination of the holder thereof, this certificate and the shares become null and void.

Said shares, as represented by this Certificate, are transferable in accordance with the Articles of the said Joint-Stock Company. This Certificate evidences the receipt of property whether personal or real, tangible or intangible, conveyed to said Joint-Stock Company under the conditions and for the purposes set forth in the said Joint-Stock Company Indenture which confers no rights, powers, privileges or interests not specifically declared in said Indenture.

IN WITNESS WHEREOF the Trustee has signed and sealed this Certificate as authorized by the said Joint-Stock Company Indenture, on this dated the ___13___ day of ___SEPTEMBER___, 2013.

_____
Name Trustee

_____
Name Trustee

ORDERED.

**Dated:  June 09, 2016**

Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                          Case No.: 6:15-bk-01838-KSJ
                                                Chapter 7
JODELL M. ALTIER,

        Debtor.
_____/

## ORDER GRANTING TRUSTEE'S MOTION FOR TURNOVER OF PROPERTY OF THE ESTATE

        This case came on for consideration on the Motion for Turnover filed by the Trustee (Document No. 89)(the "Motion"). The Motion was served by negative notice and no appropriate response was timely filed. Accordingly, it is

        **ORDERED**:

1. The Motion is granted.

2. Debtor shall turn over possession of the original "bearer shares" stock certificate for all 1,000 shares of Grande Legacy Group to Gene T. Chambers, Chapter 7 Trustee.

Attorney Michael A. Nardella is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

**Exhibit "C"**

## BILL OF SALE AND ASSIGNMENT

This Bill of Sale and Assignment (the "*Assignment*") is made this $16$ day of February, 2016, by and among Gene T. Chambers as Trustee and only as Trustee ("*Assignor*") of the Bankruptcy Estate of Jodell M. Altier, Case No. 6:15-bk-01838-KSJ before the Bankruptcy Court of the Middle District of Florida, Orlando Division (the "*Bankruptcy Case*"), and Goshen Mortgage REO, LLC, a Delaware limited liability company ("*Assignee*").

### WITNESSETH

A.    WHEREAS, pursuant to that certain *Order on Motion for Approval of Compromise of Controversy* dated July 25, 2016, entered in the Bankruptcy Case (Doc. 123) (the "*Order*"), Assignor and Assignee have entered into an agreement, and have been authorized and directed by the Court, for Assignor to sell and assign to Assignee, as the designee of Goshen Mortgage, LLC, certain assets of the Bankruptcy Estate of Jodell M. Altier, more specifically described as follows:

(a) that certain original, wet-ink Stock Certificate, Shares of Grande Legacy Group, dated September 13, 2013, as further described in the Court's *Order Granting Motion for Turnover of Property of the Estate* dated June 10, 2016 (Doc. 100);

(b) all of the Assignor's other right, title, and interest in Grande Legacy Group, a Texas joint stock company; and

(c) all claims and other causes of action the Assignor has against the Debtor Jodell M. Altier and/or against other third parties, including but not limited to all claims brought by Assignor in that certain adversary proceeding 6:15-ap-00156-KSJ, before the Bankruptcy Court of the Middle District of Florida, Orlando Division.

(collectively, the "*Assets*").

B.    WHEREAS, Assignor and Assignee desire that all of Assignor's right, title, and interest in the Assets be transferred and assigned to Assignee;

C.    WHEREAS, Assignee desires to purchase the Assets.

D.    WHEREAS, in the Order, the Court in the Bankruptcy Case authorized and directed the Assignor and the Assignee to complete the sale and assignment of the Assets and to execute and deliver all documents and to take other actions as may be necessary or appropriate to perform the obligations set forth in the Order; and

E.    WHEREAS, this Assignment completes the obligations of the Assignor under the Order as to the Assets, but only as to the Assets and excluding the Assignor's duty to cooperate as provided herein.

**Exhibit "D"**

NOW, THEREFORE, in consideration of the sum of One Hundred Eighty Five Thousand Dollars and No Cents ($185,000.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed that, effective August 10, 2016 ("*Effective Date*") Assignee shall be the owner and holder of all Assets described herein, and to that end the parties agree as follows:

1. Incorporation of Recitals.  The Recitals set forth above are hereby incorporated by reference as is fully set forth herein.

2. Sale and Assignment of Assets.  Assignor does by these presents hereby grant, bargain, sell, convey, transfer, assign, and deliver unto Assignee all of Assignor's right, title, and interest in the Assets described above to Assignee.

3. Acceptance; Cooperation.  As of the Effective Date, Assignee accepts the sale and assignment of the Assets.  Assignor agrees to cooperate in assisting Assignee with substituting in as the party to any existing, affected litigation and as otherwise anticipated by the Order.

4. Amendment.  This Assignment shall not be modified except by written instrument subscribed to by Assignor and Assignee.  Except as specifically amended by this Assignment, all of the terms, provisions, agreements, covenants, and conditions contained in the Order shall remain, unchanged and in full force and effect.

5. Inurement.  The terms and conditions of this Assignment shall be binding upon and shall inure to the benefit of the parties hereto, and their respective heirs, successors, and assigns.

6. Headings.  This section and paragraph heading contained in this Assignment are for reference purposes only and shall not affect in any way the meaning or interpretation of this Assignment.

7. Counterparts.  This Assignment may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall together constitute one and the same instrument.

8. Construction.  This Assignment shall be governed by and construed in accordance with the laws of the State of Florida.

*signatures on following pages*

Exhibit "D"

IN WITNESS WHEREOF, the parties have executed this Assignment effective as of the date first written above.

**ASSIGNOR:**

GENE T. CHAMBERS, AS TRUSTEE AND ONLY AS TRUSTEE, OF THE BANKRUPTCY ESTATE OF JODELL M. ALTIER

By: _____
    Gene T. Chambers

**ASSIGNEE:**

GOSHEN MORTGAGE REO, LLC, a Delaware limited liability company

By: _____Goshen Mortgage REO LLC_____

Print: _____William J. Bymel - Vice President_____
         bbymel@spurscapital.com

Its: _____

Exhibit "D"

## WRITTEN CONSENT BY SOLE SHAREHOLDER IN LIEU OF ORGANIZATIONAL MEETING OF GRANDE LEGACY GROUP

### RESOLUTIONS IN LIEU OF ORGANIZATIONAL MEETING

The undersigned, constituting the sole shareholder of **GRANDE LEGACY GROUP, a Texas Joint-Stock Company** (the "Company"), without the formality of convening a meeting, does hereby consent to and adopt the following resolutions.

### FORMATION AND OWNERSHIP

**WHEREAS**, the Company was formed by Jodell M. Altier ("Altier") as a Texas joint stock company ("Joint Stock Company") and was issued one (1) bearer stock certificate for 1000 Shares of the Company from the Joint Stock Company on September 13, 2013 (the "Stock"), be it

**WHEREAS**, the Stock and any interest Altier had in the Company was an asset of the Debtor, and the Debtor's estate, in that certain bankruptcy case styled: *In re Jodell Altier*, Case No. 6:15-bk-01838-KSJ, United States Bankruptcy Court in the Middle District of Florida, Orlando Division (the "Bankruptcy Case").

**WHEREAS**, the Stock and any interest Altier had in the Company was sold to Goshen Mortgage REO, LLC ("Goshen" or "Shareholder") as set forth in that bill of sale executed on August 10, 2016; and

**RESOLVED FURTHER**, that this Resolution shall clarify the management and operational control of the Company by any and all persons seeking to act on behalf of the Company.

### BYLAWS

**WHEREAS**, a form of Bylaws for the Company (attached hereto) has been reviewed by the Shareholder and Shareholder seeks to adopt said Bylaws for the Company to provide operational and managerial control of the Company.

**RESOLVED**, that the Bylaws attached hereto are hereby adopted as the sole Bylaws of this Company and any previous agreement, written or oral, seeking to manage the affairs of the Company is hereby revoked and otherwise deemed null and void.

### APPOINTMENT OF DIRECTOR AND OFFICERS

**WHEREAS**, the Shareholder seeks to appoint a sole director to manage the affairs of the Company; and

**WHEREAS**, the Bylaws provide for the election of officers of the Company by the Board of Directors, be it

### Exhibit "E"

**RESOLVED**, that the Shareholder hereby appoints Bill Bymel as the sole Director of the Company;

**RESOLVED**, that the Director elect the following Officers to the following offices:

President: Bill Bymel
Vice President: Bill Bymel
Treasurer and Secretary: Bill Bymel

**RESOLVED**, that any other person, other than set forth herein or established subsequently by the Bylaws, individually or through any entity, seeking to take action or act on behalf of the Company, as "trustee", director, agent, attorney, or in any other capacity, including but not limited to, Jodell Altier, Joe Altier, Darren Lavine and Jill Altier, are not authorized by the Company and are removed from any and all position of authority seeking to bind the Company.

## GENERAL AUTHORITY

**RESOLVED**, that any and all actions heretofore or hereafter taken by the Director or Officers of the Company within the terms of any of the foregoing resolutions are hereby ratified and confirmed as the act of the Company.

**RESOLVED**, that Company believes it is in its best interest to transfer any and all property, real or personal, it owns to Goshen Mortgage REO, LLC and the Officers are authorized to take any and all actions necessary to consummate the transaction.

**RESOLVED FURTHER**, that the Sole Director and/or Shareholder of the Company is hereby authorized and directed to execute and deliver any and all documents and to take such other action as he deems necessary, advisable, or appropriate to carry out the purposes and intent, but within the limitations, of the foregoing resolutions. This document may be executed in parts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

Dated August *17*, 2016.

Bill Bymel for Goshen Mortgage REO, LLC
as the Sole Shareholder of Grande Legacy Group

Acknowledged By:

Bill Bymel as the Sole Director and President of
Grande Legacy Group

## Exhibit "E"

BYLAWS

OF

GRANDE LEGACY GROUP

## ARTICLE I - MEETINGS OF SHAREHOLDERS

SECTION 1. **ANNUAL MEETING**. The annual meeting of the shareholders of the corporation shall be held as set forth under Texas law. The business transacted at the annual meeting shall include the election of directors, and the conduct of any other proper business of the corporation, unless approved by written consent by the Shareholders.

SECTION 2. **SPECIAL MEETINGS**. Special meetings of the shareholders shall be held when called by the Board of Directors, or when requested in writing by the holders of not fewer than ten percent (10%) of all votes entitled to be cast on any issue to be considered at the meeting.

SECTION 3. **PLACE**. Meetings of the shareholders may be held within or without the State of Florida, at such time and location as may be stated in the meeting notice.

SECTION 4. **NOTICE**. Written notice setting forth the date, time, and place of the meeting, and, in the case of a special meeting, or when otherwise required by law, the purpose or purposes thereof, must be given not fewer than ten (10) nor more than sixty (60) days before the meeting, either personally, or by first class mail, postage prepaid, to each shareholder of record entitled to vote at such meeting. If mailed, the notice shall be deemed to be delivered when deposited in the United States mail, addressed to the shareholder at such shareholder's address as it appears on the share transfer books of the corporation.

SECTION 5. **NOTICE OF ADJOURNED MEETINGS**. When a meeting of shareholders is adjourned to another time or place, it shall not be necessary to provide notice of the adjourned meeting if the date, time, and place to which the meeting is adjourned are announced at the meeting at which the adjournment is taken, and at the adjourned meeting any business may be transacted that might have been transacted at the original meeting; *provided, however*, if, after the adjournment, the Board of Directors fixes a new record date for the adjourned meeting, a notice of the adjourned meeting shall be given as provided in Section 4 of this Article I to each shareholder of record on the new record date entitled to vote at such adjourned meeting.

SECTION 6. **RECORD DATE**. For the purpose of determining the identity of shareholders entitled to notice of, or to vote at, any meeting of shareholders, or any adjournment thereof, to vote, or in order to make a determination of shareholders for any other purpose, the Board of Directors may fix in advance a date as the record date for any determination of shareholders, such date to be not more than seventy (70) days prior to the date on which the particular meeting is to be held or the particular action requiring such determination of shareholders is to be taken. Notwithstanding the foregoing, the record date for determining shareholders entitled to demand a special meeting of shareholders shall be the date the first shareholder delivers a demand for such

**Exhibit "E"**

meeting to the corporation. In no event may a record date fixed by the Board of Directors be a date preceding the date upon which the resolution fixing the record date is adopted.

If no record date is fixed for the determination of shareholders entitled to notice of or to vote at a meeting of shareholders, the close of business on the date immediately prior to the date on which the first notice of the meeting is delivered to shareholders shall be the record date for the determination of shareholders. When a determination of shareholders entitled to vote at any meeting of shareholders has been made as provided in this section, such determination shall apply to any adjournment thereof, unless the Board of Directors fixes a new record date for the adjourned meeting. In the event a meeting of shareholders is adjourned to a date more than one hundred twenty (120) days following the date fixed for the meeting, as originally scheduled, the Board of Directors shall fix a new record date.

SECTION 7. **SHAREHOLDERS' LIST FOR MEETING**. After fixing a record date for a meeting of shareholders, the corporation shall prepare an alphabetical list of the names of all its shareholders who are entitled to notice of such meeting, arranged by voting group, with the address of, and the number and class and series, if any, of shares held by each shareholder. Subject to any restrictions imposed by applicable law or by Section 2 of Article V of these Bylaws, the shareholders' list shall be made available for inspection by any shareholder, for a period of ten (10) days preceding the meeting, or such shorter period of time as exists between the record date and the meeting, and continuing through the meeting, at the corporation's principal office, at a place identified in the meeting notice in the city where the meeting will be held, or at the office of the corporation's transfer agent or registrar, if any.

SECTION 8. **SHAREHOLDER QUORUM AND VOTING**. Unless otherwise provided in the Articles of Incorporation or Written Action by the shareholders of the company, a majority of the shares entitled to vote, represented in person or by proxy, shall constitute a quorum for the transaction of business at a meeting of shareholders. When a specified item of business is required to be voted on by a class or series of shares, unless otherwise provided in the Articles of Incorporation of the corporation, a majority of the shares of such class or series shall constitute a quorum for the transaction of such item of business by that class or series. If a quorum is present, the affirmative vote of a majority (other than in the election of directors, which shall be by a plurality of votes cast) of the shares represented at the meeting and entitled to vote on the subject matter shall be the act of the shareholders, unless otherwise provided by applicable law or the Articles of Incorporation. Once a share is represented for any purpose at a meeting, it shall be deemed present for quorum purposes for the remainder of the meeting, and for any adjournment thereof, unless a new record date is or must be set for such adjourned meeting.

SECTION 9. **VOTING OF SHARES**. Except as otherwise provided in the Articles of Incorporation of the corporation, each outstanding share, regardless of class or series, shall be entitled to one vote on each matter submitted to a vote of shareholders. If the Articles of Incorporation of the corporation provide for more or less than one (1) vote for any share on any matter, every reference in these Bylaws to a majority or other proportion of shares shall refer to such a majority or other proportion of votes entitled to be cast. Notwithstanding the foregoing, shares of the corporation are not entitled to be voted (or counted as outstanding), if they are: (i) owned, directly or indirectly, by a second corporation, domestic or foreign, if the corporation owns, directly or indirectly, a majority of the shares entitled to vote for directors of such second corporation; or, (ii) held as treasury shares by

Exhibit "E"

the corporation; *provided, however*, that nothing in this sentence shall limit the power of the corporation to vote shares, including shares issued by it, held by it in a fiduciary capacity. Redeemable shares shall not be entitled to vote on any matter, and shall not be deemed to be outstanding, after notice of redemption is mailed to the holders thereof, and a sum sufficient to redeem such shares has been deposited with a bank, trust company, or other financial institution with an irrevocable obligation to pay the holders the redemption price therefor upon surrender of such redeemable shares.

SECTION 10. **PROXIES**. Every shareholder (or other person entitled to vote on behalf of a shareholder) entitled to vote at a meeting of shareholders, or to express consent without a meeting, may authorize another person or persons to act by proxy. A shareholder (or other person entitled to vote shares of the corporation) may appoint a proxy to vote or otherwise act by signing an appointment form, either personally or by attorney in fact. An executed telegram or cablegram appearing to have been transmitted by such person, or a photographic, photostatic, or equivalent reproduction of an appointment form, shall constitute a sufficient appointment form. An appointment of a proxy is effective when received by the Secretary or other officer or agent of the corporation authorized to tabulate votes. An appointment of proxy shall be valid for up to eleven (11) months, unless a longer period is expressly provided in the appointment form. If a proxy appointment form expressly provides, any proxy holder may appoint, in writing, a substitute to act in such proxy holder's place.

The death or incapacity of the shareholder (or other person entitled to vote shares of the corporation) appointing a proxy does not affect the right of the corporation to accept the proxy's authority, unless notice of the death or incapacity is received by the Secretary or other officer or agent of the corporation authorized to tabulate votes before the proxy exercises the authority granted under the appointment.

SECTION 11. **SHARES HELD BY NOMINEES**. The Secretary of the corporation may (but shall not be required to) establish a procedure by which the beneficial owner of shares that are registered in the name of a nominee is recognized by the corporation as the shareholder. The extent of such recognition may be determined by the procedure. The procedure may set forth:

    (a)    the types of nominees to which it applies;

    (b)    the rights and privileges the corporation recognizes in a beneficial owner;

    (c)    the manner in which the procedure is selected by the nominee;

    (d)    the information that must be provided when the procedure is selected;

    (e)    the period for which selection of the procedure is effective; and,

**Exhibit "E"**

(f)      any other aspects of the rights and duties created pursuant to the procedure.

SECTION 12.  **ACTION BY SHAREHOLDERS WITHOUT A MEETING**. Unless otherwise provided in the Articles of Incorporation of the corporation, action required or permitted to be taken at an annual or special meeting of shareholders, may be taken without a meeting, without prior notice, and without a vote if the action is taken by the holders of outstanding shares of each voting group entitled to vote thereon having not less than the minimum number of votes with respect to each voting group that would be necessary to authorize or take such action at a meeting at which all voting groups and shares entitled to vote thereon were present and voted

## ARTICLE II - DIRECTORS

SECTION 1.  **FUNCTION**.  Subject to any limitation set forth in the Articles of Incorporation of the corporation, all corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation shall be managed under the direction of, its Board of Directors.  In conducting the proper business of the corporation, the Board of Directors is authorized to do all such lawful acts as are not otherwise required by applicable law, the Articles of Incorporation, or these Bylaws to be done by the shareholders.

SECTION 2.  **QUALIFICATION**.  Unless the Articles of Incorporation so require, directors need not be shareholders or employees of the corporation or residents of the state of Florida or Texas, but must be natural persons who are at least eighteen (18) years of age.  The Articles of Incorporation of the corporation may prescribe additional qualifications of directors.

SECTION 3.  **COMPENSATION**.  Unless specifically determined otherwise by the shareholders, directors shall serve as such without compensation, other than the reimbursement of reasonable expenses properly incurred in connection with attendance at meetings of the Board of Directors.

SECTION 4.  **DUTIES OF DIRECTORS**.  A director shall discharge his or her duties in such capacity, including his or her duties as a member of any committee of the Board of Directors upon which such director may serve, in good faith, with the care an ordinarily prudent person in a similar position would exercise under similar circumstances, and in a manner such director reasonably believes to be in the best interests of the corporation.  In discharging his or her duties, a director shall be entitled to rely on information, opinions, reports, or statements, including, without limitation, financial statements and other financial data, in each case prepared or presented by:

(a)      one (1) or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented;

(b)      legal counsel, public accountants, or other persons as to matters which the director reasonably believes to be within such person's professional or expert competence; or,

(c)      a committee of the Board of Directors upon which such director does not serve, duly designated in accordance with applicable law, the Articles of Incorporation, or

**Exhibit "E"**

these Bylaws, as to matters within its designated authority, which committee the director reasonably believes to merit confidence.

A director shall not be considered to be acting in good faith if such director has knowledge concerning a matter in question that would cause the reliance described in this section to be unwarranted. Without affecting any rights or defenses available to directors under applicable law, the Articles of Incorporation, or by separate agreement, a director shall not be liable for any action taken as a director, or any failure to take any action, if such director performs the duties of his or her office in compliance with the standards provided in this section.

In discharging his or her duties, a director may consider such factors as such director deems relevant, including, without limitation, the long term prospects and interests of the corporation and its shareholders, and the social, economic, legal, or other effects of any action on the employees, suppliers, customers of the corporation or its subsidiaries, the communities and society in which the corporation and its subsidiaries operate, and the economy of the state and the nation.

SECTION 5.  **PRESUMPTION OF ASSENT**.  A director of the corporation who is present at a meeting of the Board of Directors, or a committee thereof of which such director is a member, at which action on any matter is taken shall be deemed to have assented to the action taken, unless such director objects at the beginning of the meeting (or promptly upon arrival thereat) to the holding of the meeting or the transaction of specified business thereat, or unless such director votes against or abstains from the action taken, or abstains from voting in respect thereto because of an asserted conflict of interest.

SECTION 6.  **NUMBER**.  The corporation shall have at least one (1) director.

SECTION 7.  **ELECTION AND TERM**.  Each person named in the Articles of Incorporation as a member of the initial Board of Directors, or as designated by the incorporator(s) or shareholders of the corporation, shall hold office until the first meeting of shareholders at which directors are elected, and until such director's successor is elected and qualifies, or until such director's earlier resignation, removal from office, or death.  Subject to any requirements of the Articles of Incorporation or these Bylaws with respect to staggered terms for directors, at each annual meeting of shareholders of the corporation, the shareholders shall elect directors to hold office until the next succeeding annual meeting.  Each director so elected shall hold office for the term for which such director is elected, and until such director's successor shall have been elected and qualifies, or until such director's earlier resignation, removal from office, or death.

SECTION 8.  **VACANCIES**.  Any vacancy occurring on the Board of Directors, including a vacancy created by reason of an increase in the number of directors, may be filled only by a vote of the shareholders.  A director elected to fill a vacancy shall hold office only until the next election of directors by the shareholders.

SECTION 9.  **REMOVAL OF DIRECTORS**.  The shareholders may remove one (1) or more directors with or without cause, unless the Articles of Incorporation provide that directors may be removed only for cause.  If a director is elected by a voting group of shareholders, only the shareholders of that voting group may participate in the vote to remove such director.  If cumulative voting is authorized by the Articles of Incorporation, a director may not be removed if the number of

**Exhibit "E"**

votes sufficient to elect such director under cumulative voting is voted against such director's removal. If cumulative voting is not authorized by the Articles of Incorporation, a director may be removed only if the number of votes cast to remove such director exceeds the number of votes cast not to remove such director. A director may be removed by the shareholders at a meeting of shareholders only if the notice of the meeting states that the purpose, or one of the purposes, of the meeting is removal of the director.

SECTION 10. **QUORUM AND VOTING.** Unless the Articles of Incorporation require a different number, a majority of the aggregate number of directors shall constitute a quorum for the transaction of business. The act of a majority of the directors present at a meeting at which a quorum exists shall be the act of the Board of Directors.

SECTION 11. **DIRECTOR CONFLICTS OF INTEREST**. No contract or other transaction between the corporation and one (1) or more of its directors, or any other corporation, firm, association, or entity in which one (1) or more of the directors are directors or officers or are financially interested, shall be either void or voidable because of such relationship or interest, because such director or directors are present at the meeting of the Board of Directors, or a committee thereof, which authorizes, approves, or ratifies the subject contract or transaction, or because the votes of such directors are counted for such purpose, provided that:

(a) the fact of such relationship or interest is disclosed to or is otherwise known by the Board of Directors or the committee thereof which authorizes, approves, or ratifies the contract or transaction by a vote or consent sufficient for that purpose without counting the votes or consents of the interested directors; or,

(b) the fact of such relationship or interest is disclosed to or is otherwise known by the shareholders entitled to vote, and the shareholders authorize, approve, or ratify the contract or transaction by vote or written consent; or,

(c) the contract or transaction is fair and reasonable as to the corporation at the time it is authorized by the Board of Directors, a committee thereof, or the shareholders.

Common or interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or a committee thereof which authorizes, approves, or ratifies such a contract or transaction. For purposes of this section, a conflict of interest transaction is authorized, approved, or ratified if it receives the vote of a majority of the shares entitled to be counted. Shares owned by or voted under the control of a director who has a relationship or interest in the transaction described in the foregoing portions of this section may not be counted in a vote of shareholders to determine whether to authorize, approve, or ratify a conflict of interest transaction. However, the vote of such shares shall be counted in determining whether the transaction is approved for any other purpose. Notwithstanding any other term or provision of these Bylaws, a majority of the shares, whether or not present, that are entitled to be counted in a vote to authorize, approve, or ratify a conflict of interest transaction shall constitute a quorum for such purpose.

SECTION 12. **EXECUTIVE AND OTHER COMMITTEES**. Unless otherwise provided in the Articles of Incorporation of the corporation, the Board of Directors, by resolution adopted by a majority of the full Board, may designate from among its members an executive

**Exhibit "E"**

committee and one (1) or more other committees, of not fewer than two (2) members, each of which, to the extent provided in such resolution, shall have and may exercise all the authority of the Board of Directors, except that no such committee shall have the authority to:

      (a)    approve or recommend to the shareholders actions or proposals required by Chapter 607 of the Florida Statutes to be approved by the shareholders; or,

      (b)    fill vacancies on the Board of Directors or any committee thereof; or,

      (c)    adopt, amend, or repeal these Bylaws, even if the Board of Directors shall have authority to do so; or,

      (d)    authorize or approve the reacquisition of shares of the corporation unless pursuant to a general formula or method specified by the Board of Directors; or,

      (e)    authorize or approve the issuance or sale of, or any agreement to issue or sell, shares of the corporation, or determine the designations, relative rights, preferences, and limitations of a voting group of shares, except that the Board of Directors may authorize a committee (or a senior executive officer of the corporation) to do so within limits specifically prescribed by the Board of Directors.

The Board of Directors, by resolution adopted in accordance with this section, may designate one (1) or more directors as alternate members of any such committee, who may act in the place of an absent member or members at any meeting of the committee. The provisions of Section 10 and Section 13 of this Article II shall apply with equal force and effect to all meetings of committees of the Board of Directors, as if the aggregate number of members of the committee were all of the members of the full Board of Directors. Neither the designation of any such committee, the delegation thereto of authority, or action by such committee pursuant to such authority shall alone constitute compliance by any member of the Board of Directors not a member of the committee in question with such director's responsibility to act in good faith, in a manner such director reasonably believes to be in the best interests of the corporation, and with such care as an ordinarily prudent person in a similar position would use under similar circumstances.

SECTION 13. **MEETINGS**. Regular and special meetings of the Board of Directors may be held within or without the State of Florida. Unless otherwise required by the Articles of Incorporation of the Corporation: (i) regular meetings of the Board of Directors shall be held without notice of the date, time, place, or purpose of the meeting at such times as may be fixed by the Board; and, (ii) written notice of the date, time, and place of special meetings of the Board of Directors shall be delivered to each director at least two (2) days before the meeting, which notice need not describe the purpose of any such special meeting.

Notice of a meeting of the Board of Directors need not be given to any director who executes a waiver of notice either before or following the meeting. The attendance of a director at a meeting shall constitute a waiver of notice of such meeting and a waiver of any and all objections to the place of the meeting, the time of the meeting, or the manner in which it has been called or convened, except when a director states, at the beginning of the meeting or promptly upon arrival

**Exhibit "E"**

thereat, an objection to the transaction of business because the meeting is not lawfully called or convened.

A majority of the directors present, whether or not a quorum exists, may adjourn any meeting of the Board of Directors to another time and place. Notice of such adjourned meeting shall be given to the directors who were not present at the time of the adjournment, and, unless the time and place of the adjourned meeting are announced at the time of the adjournment, to all other directors.

Unless otherwise provided in the Articles of Incorporation of the corporation: (i) meetings of the Board of Directors may be called by the Chairman of the Board, if any, by the President of the Corporation, or by any two (2) directors; (ii) the Board of Directors may permit any or all directors to participate in a regular or special meeting of the Board by, or conduct the meeting through the use of, any means of communication by which all directors participating in the meeting can simultaneously hear each other. Participation in this manner shall constitute presence in person at a meeting.

SECTION 14. **ACTION WITHOUT A MEETING**. Unless otherwise provided in the Articles of Incorporation of the corporation, any action required or permitted to be taken at a meeting of the Board of Directors, or any committee thereof, may be taken without a meeting if a consent in writing, setting forth the action to be taken and signed by all the directors, or all the members of the committee, as the case may be, is filed in the minutes of the proceedings of the Board of Directors or of the committee. Such consent shall have the same effect as a unanimous vote.

## ARTICLE III - OFFICERS

SECTION 1. **OFFICERS**. The officers of the corporation may include a Chairman of the Board of Directors and any one (1) or more Vice Chairmen of the Board of Directors, if appointed by the Board, and shall consist of a President, a Secretary, and a Treasurer, each of whom shall be appointed by the Board of Directors at the annual meeting of directors immediately following the annual meeting of shareholders of the corporation, or at such other time as may be designated by the Board of Directors, and shall serve until their respective successors are chosen and duly qualify, or until their earlier resignation, removal from office, or death. Such other officers and assistant officers as may be deemed necessary may be appointed by the Board of Directors from time to time. Any two or more offices may be held by the same person. The failure to elect a President, a Secretary, or a Treasurer shall not affect the legal existence of the corporation. All officers appointed must be at least eighteen (18) years of age, and the Chairman of the Board of Directors and any Vice Chairman of the Board of Directors must simultaneously hold a position as a director of the corporation. The salaries and other compensation of all officers of the corporation shall be fixed by the Board of Directors or a duly authorized committee thereof.

SECTION 2. **DUTIES**. The respective officers of the corporation shall have the following duties:

(a)    Chairman and Vice Chairmen - The Chairman of the Board of Directors, and, in the absence of the Chairman, the Vice Chairmen in order of seniority of

**Exhibit "E"**

continuous service as a director, shall preside at all meetings of the shareholders and directors of the corporation, but shall have no additional authority other than as a director.

(b)   <u>President</u> - The President shall be the chief executive officer and chief operating officer of the corporation, and, in such capacity, shall have authority over the general and active management of the business and affairs of the corporation, subject to the direction of the Board of Directors. In the absence of the Chairman or any Vice Chairman of the Board, the President shall preside at all meetings of the shareholders and directors.

(c)   <u>Secretary</u> - The Secretary shall attend all meetings of the shareholders and directors (and all committees thereof), and shall record all of the proceedings thereof. The Secretary shall be responsible for the custody and maintenance of the corporate seal and all corporate records, except financial records, shall deliver all notices of meetings, shall authenticate records of the corporation, and shall perform such other duties as may be prescribed by the Board of Directors or the President. The Secretary, each Assistant Secretary, if any, appointed by the Board of Directors, and any other officer authorized by the Board of Directors shall have authority to affix the corporate seal to any instrument executed by the corporation.

(d)   <u>Assistant Secretaries</u> - The Assistant Secretary, or, if more than one (1), the Assistant Secretaries in the order determined by the Board of Directors, shall, in the absence or disability of the Secretary, perform the duties and exercise the powers of the Secretary, and shall perform such other duties and have such other powers as the Board of Directors may, from time to time, prescribe.

(e)   <u>Treasurer</u> - The Treasurer shall have custody of all corporate funds and financial records, shall keep full and accurate records and accounts of receipts and disburse-ments in books belonging to the corporation, shall deposit all moneys and other valuable effects in the name and to the credit of the corporation in such depositories as may be designated by the Board of Directors, shall disburse funds of the corporation as may be directed by the Board of Directors, taking proper vouchers for such disbursements, shall render accounts of all transactions whenever required by the Board of Directors or the President, and shall perform such other duties as may be prescribed by the Board of Directors or the President. If required by the Board of Directors, the Treasurer shall obtain for the benefit of the corporation a bond in such sum and with such surety or sureties as shall be approved by the Board of Directors for the faithful performance of the duties of the Treasurer's office, and for the restoration to the corporation, in case of the death, resignation, or removal from office of the Treasurer, of all books, papers, vouchers, money, and other property of whatever kind in the possession or under the control of the Treasurer belonging to the corporation.

(f)   <u>Assistant Treasurers</u> - The Assistant Treasurer, or, if more than one (1), the Assistant Treasurers in the order determined by the Board of Directors, shall, in the absence or disability of the Treasurer, perform the duties and exercise the powers of the Treasurer, and shall perform such other duties and have such other powers as the Board of Directors may, from time to time, prescribe.

(g)   <u>Vice Presidents</u> - The Vice President, or, if more than one (1), the Vice Presidents in the order determined by the Board of Directors, shall, in the absence or disability

<u>Exhibit "E"</u>

of the President, perform the duties and exercise the powers of the President, and shall perform such other duties and have such other powers as the Board of Directors may, from time to time, prescribe.

SECTION 3. **REMOVAL OF OFFICERS**. Any officer appointed by the Board of Directors may be removed by the Board with or without cause. An officer may resign at any time by delivering notice to the corporation, such resignation to be effective when such notice is delivered, unless the notice specifies a later effective date. A vacancy in any office, however occurring, may be filled by the Board of Directors. The removal of any officer shall be without prejudice to the contract rights, if any, of the person so removed; *provided, however*, that the appointment of an officer shall not, of itself, create contract rights in the person appointed. The resignation of an officer shall not affect the corporation's contract rights, if any, with such officer.

## ARTICLE IV - CERTIFICATES FOR SHARES

SECTION 1. **REPRESENTATION BY CERTIFICATES**. Shares issued by the company must be represented by certificates. The corporation shall not issue uncertificated shares.

SECTION 2. **LOST, STOLEN, OR DESTROYED CERTIFICATES**. The corporation shall issue a new stock certificate in the place of any certificate previously issued if the holder of record of the certificate: (a) makes proof in affidavit form that it has been lost, destroyed, or wrongfully taken; (b) requests the issuance of a new certificate before the corporation has notice that the existing certificate has been acquired by a purchaser for value, in good faith, and without notice of any adverse claim; and, (c) satisfies any other reasonable requirement (including, without limitation, the posting of an indemnity bond) imposed by the Board of Directors to protect the corporation from any claim that may be made against it with respect to any such lost, destroyed, or wrongfully taken certificate.

SECTION 3. **TRANSFERS OF SHARES**. Upon surrender to the corporation or the transfer agent, if any, of the corporation, of a certificate representing shares duly endorsed and accompanied by proper evidence of succession, assignment, or authority to transfer, a new certificate or an equivalent new uncertificated security shall be issued to the person entitled thereto, the old certificate shall be canceled, and the transaction shall be recorded upon the share transfer books of the corporation.

## ARTICLE V - BOOKS AND RECORDS

SECTION 1. **BOOKS AND RECORDS**. The corporation shall keep as permanent records minutes of all meetings of its shareholders and Board of Directors, a record of all actions taken by the shareholders and the Board of Directors without a meeting, a record of all actions taken by all committees of the Board of Directors, and accurate and complete accounting records. The corporation or its transfer agent or registrar, if any, shall also maintain a record of its shareholders in a form that permits preparation of a list of the names and addresses of all shareholders in alphabetical order by class of shares, showing the number and series of shares held by each. The corporation shall maintain its records in written form or in another form capable of conversion into written form within a reasonable time.

**Exhibit "E"**

The corporation shall retain on file a copy of the following records:

      (a)     its Articles of Incorporation and all amendments thereto;

      (b)     these Bylaws and all amendments thereto;

      (c)     all resolutions adopted by the Board of Directors creating one (1) or more classes or series of shares and fixing their designations, relative rights, preferences, and limitations, if shares issued pursuant to these resolutions are outstanding;

      (d)     minutes of all shareholders' meetings and records of all actions taken by shareholders during the immediately preceding three (3) years;

      (e)     written communications to all shareholders generally, or to all shareholders of a class or series, in each case within the preceding three (3) years, including all financial statements furnished for the preceding three (3) years pursuant to §607.1620 of the Florida Statutes;

      (f)     a list of the names and business street addresses of its current directors and officers; and,

      (g)     its most recent annual report delivered to the Florida Department of State pursuant to §607.1622 of the Florida Statutes.

    SECTION 2. **SHAREHOLDERS' INSPECTION RIGHTS**. A shareholder of the corporation is entitled to inspect and copy, during regular business hours at the corporation's principal office, all records of the corporation described in subsections (a) through (g) of the immediately preceding Section 1 of this Article V if such shareholder provides to the corporation written notice of the demand therefor at least five (5) business days before the date designated for such inspection and copying. In addition, a shareholder of the corporation is entitled to inspect and copy, during regular business hours at a reasonable location specified by the corporation, any of the following records of the corporation, if: (i) the shareholder makes the demand for inspection and copying in good faith and for a purpose reasonably related to the shareholder's interest as a shareholder of the corporation; (ii) the demand for inspection and copying describes with reasonable particularity the purpose and the records to be inspected and such records are directly connected with the purpose stated; and, (iii) written notice of such demand is provided to the corporation at least five (5) business days before the date designated for such inspection and copying:

      (a)     excerpts from minutes of any meeting of the Board of Directors, records of any action of a committee of the Board of Directors while acting in place of the Board of Directors on behalf of the corporation, minutes of any meeting of the shareholders, and records of actions taken by the shareholders or Board of Directors (or any committee thereof) without a meeting, to the extent not subject to inspection pursuant to the initial sentence of this section;

      (b)     all accounting records of the corporation;

**Exhibit "E"**

(c)     the record of shareholders of the corporation; and,

(d)     any of the other books and records of the corporation.

SECTION 3. **OTHER INFORMATION**. The corporation shall also prepare, retain, and deliver to its shareholders all financial statements, reports, and other information required by §607.1620 and §□607.1621 of the Florida Statutes.

## ARTICLE VI - DISTRIBUTIONS TO SHAREHOLDERS

The Board of Directors may authorize, and the corporation may make, distributions to shareholders of the corporation, subject to restrictions imposed by applicable law and by the Articles of Incorporation. If the Board of Directors does not fix a record date for determining shareholders entitled to a distribution (other than one involving a purchase, redemption, or other acquisition of the corporation's shares), such record date shall be the date the Board of Directors authorizes the distribution.

No distribution may be made if, after giving it effect:

(a)     the corporation would not be able to pay its debts as they become due in the usual course of business; or,

(b)     the corporation's total assets would be less than the sum of its total liabilities plus (unless the Articles of Incorporation permit otherwise) the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those shareholders receiving the distribution.

The Board of Directors may base a determination that a distribution is not prohibited under the immediately preceding paragraph of this section either on financial statements prepared on the basis of accounting practices and principles that are reasonable under the circumstances or on a fair valuation or other method that is reasonable under the circumstances. In the case of any distribution based on such valuation, each such distribution shall be identified as a distribution based upon a current valuation of assets, and the amount per share paid on the basis of such valuation shall be disclosed to the shareholders concurrent with their receipt of the distribution.

**Exhibit "E"**

## ARTICLE VII - LOANS AND GUARANTEES

The corporation may lend money to, guarantee any obligation of, or otherwise assist any officer, director, or employee of the corporation or of a subsidiary of the corporation, whenever, in the judgment of the Board of Directors, such loan, guaranty, or assistance may reasonably be expected to benefit the corporation. The loan, guaranty, or other assistance may be with or without interest, and may be unsecured or secured in such manner as the Board of Directors shall approve, including, without limitation, a pledge of shares of stock of the corporation. Nothing in this section shall be deemed to deny, limit, or restrict the powers of guaranty or warranty of the corporation at common law or under any statute. Loans, guarantees, or other types of assistance are subject to the requirements of §607.0832 of the Florida Statutes.

## ARTICLE VIII - GENERAL

SECTION 1. **CHECKS**. All checks or demands for money and notes of the corporation shall be signed by such officer or officers or such other person or persons as the Board of Directors may, from time to time, designate.

SECTION 2. **FISCAL YEAR**. The fiscal year of the corporation shall be fixed by resolution of the Board of Directors.

## ARTICLE IX - AMENDMENT

These Bylaws may be repealed or amended, and new Bylaws may be adopted, only by the shareholders of the corporation in accordance with applicable law.

**Exhibit "E"**