ORDERED.

Dated: March 15, 2017

_____
Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re | |
| JODELL M. ALTIER, | Case No. 6:15-bk-01838-KSJ |
| | Chapter 7 |
| Debtor. | |
| GOSHEN MORTGAGE, LLC, | |
| Plaintiff, | |
| vs. | Adversary No. 6:15-ap-00156-KSJ |
| JODELL M. ALTIER, | |
| Defendant. | |

**MEMORANDUM OPINION GRANTING GOSHEN'S SECOND
MOTION FOR SUMMARY JUDGMENT ON FRAUDULENT TRANSFER ISSUES**

This consolidated adversary proceeding came before the Court on Goshen Mortgage, LLC's Motion for Summary Judgment seeking to avoid transfers of two parcels of real estate as

fraudulent.[1] After reviewing the pleadings and considering the positions of all interested parties, including the late affidavit filed by the Debtor,[2] the Court will grant summary judgment and avoid the transfers.

In 2002, Debtor obtained title, in her name only, to two pieces of real property: 2122 Kettle Drive, Orlando, Florida (the "Kettle Drive Property")[3] and 280 Lanternback Island Drive, Satellite Beach, Florida (the "Lanternback Property") (collectively "the Properties").[4] Debtor does not live on the Properties—they are two vacant pieces of land zoned for residential uses. In 2012, Debtor conveyed the Properties to Jennifer Sandman and Jill Altier as successor co-trustees of the Altier Family Irrevocable Trust U/A DTD 7/9/2002 (the "Altier Family Trust").[5] In 2013, the Debtor, as "Trustee," and her husband Joseph Altier, as "Trustee," conveyed the Properties to an entity called Grande Legacy Group.[6]

---

[1] Doc. No. 122. Goshen seeks judgment as a matter of law on Counts VIII and XIII of the Complaint. Adversary Proceeding 6:15-ap-00156-KSJ and Adversary Proceeding 6:16-ap-00013-KSJ were consolidated for all purposes under Adversary Proceeding 6:15-ap-00156-KSJ (the "Lead Case") on April 15, 2016. Doc. No. 33 in Adversary Proceeding 6:16-ap-00013-KSJ, Doc. No. 20 in Adversary Proceeding 6:15-ap-00156-KSJ. Throughout the rest of this memorandum opinion, the Court will refer to documents in the Lead Case without a reference to the case number, and document numbers in the consolidated adversary proceeding are referenced as "Doc. No. ___ in Adversary Proceeding 6:16-ap-00013." Goshen Mortgage, LLC is referenced as "Goshen." Documents in the main case are referenced as "Doc. No. ___ in Main Case 6:15-bk-01838."

[2] Goshen filed an earlier Motion for Summary Judgment seeking a declaration that two parcels of real property are owned by an entity called Grande Legacy Group free and clear of any interests that the Debtor, her family, or the Debtor's family trust might claim ("Quiet Title Motion"). Doc. No. 62. Debtor responded to the Quiet Title Motion on November 3, 2016. Doc. No. 136. Goshen replied to the Debtor's response on November 14, 2016. Doc. No. 133. Debtor filed a Motion for Extension of Time to Respond to Goshen's Motion for Summary Judgment on December 5, 2016. Doc. No. 147. At that point, the deadline had passed to file a response to *both* pending Motions for Summary Judgment, but the Court allowed the Debtor additional time to file affidavits in opposition to the two pending Motions for Summary Judgment by December 16, 2016. Doc. No. 150. Debtor did not file an affidavit till December 20, 2016. Doc. No. 154. The Court, however, will consider the Affidavit a response to both pending Motions.

[3] Doc. No. 122, Exh. E; Doc. No. 28 in Adversary Proceeding 6:16-ap-00013, ¶ 18 (the "Altier Answer"). The property is more particularly described as "Lot 67, Metrowest Unit Two Replat, according to the map or plat thereof, as recorded in Plat Book 23, Pages 120 and 121, of the Public Records of Orange County, Florida."

[4] Doc. No. 122, Exh. F; Altier Answer, ¶ 27. The property is more particularly described as "Lot 28, Block 7, Tortoise Island, Phase Four, P.U.D., according to the Plat thereof as recorded in Plat Book 34, Pages 69 through 79, of the Public Records of Brevard County, Florida."

[5] Doc. No. 122, Exhs. I, K; Altier Answer, ¶¶ 20, 29.

[6] Doc. No. 122, Exhs. J, L; Doc. No. 84 in Main Case 6:15-bk-01838-KSJ, ¶ 18.

The Properties have considerable value—the record shows together they are worth just over $300,000.[7] But each transfer was for $10 and undefined "other valuable considerations."[8] After the second transfer to Grande Legacy in 2013, Debtor received a stock certificate, but she testified that she did not know if the stock certificate had any value and could not place a value on the stock certificate.[9] Debtor produced no documentation showing any other consideration was received by the Debtor for the Properties.[10] Debtor concedes the Properties were transferred to Grande Legacy in 2013,[11] and the transfers were specifically for asset protection purposes.[12]

These transfers occurred after creditors had sued the Debtor for unpaid debts. Suntrust had sued the Debtor "seeking to enforce the terms of a personal guarantee[,] and [in late 2012] obtained [an over $1 million] judgment against the Debtor [and other Defendants jointly and severally for failure] to remit payments of all sums owed under a commercial loan to Altier Properties, LLC."[13] Goshen's predecessor in interest, Christiana Trust,[14] also had sued to foreclose a note and mortgage it held on the Debtor's home based on Debtor's failure to pay her mortgage for several years.[15] Christiana Trust obtained a summary judgment of foreclosure in that lawsuit.[16] Goshen now claims approximately $325,000 is due on the home mortgage.[17]

---

[7] Doc. No. 122, Exhs. P. Exhibit P includes the property summaries from the Orange County and Brevard County Property Appraisers showing these tax assessed values in 2016: Kettle Drive Property at $67,000; Lanternback Property at $240,000. Debtor filed nothing opposing these values.

[8] Doc. No. 122, Exhs. I, J, K, L.

[9] Doc. No. 122, Exh. N, p. 12, Lines 23-25, p. 13, Lines 1-13, p. 26, Lines 17-22.

[10] Doc. No. 122, ¶¶ 18-19.

[11] Doc. No. 122, Exhs. M, N, O.

[12] *Id.*

[13] Doc. No. 122, ¶ 10, Exh. G.

[14] Doc. No. 27, p. 33 in Main Case 6:15-bk-01838.

[15] Doc. No. 122, ¶ 11, Exh. H. This foreclosure suit related to the Debtor's home at 2507 Roat Drive, Orlando, Florida, 32835. Christiana Trust filed its complaint based on the Debtor's failure to pay the mortgage since November 1, 2011.

[16] Doc. No. 122, Exh. H.

[17] Doc. No. 27 in Main Case 6:15-bk-01838. Goshen filed a Motion for Relief from Stay on June 23, 2015, that outlined how much was due on the mortgage. It also attached the final judgment of foreclosure. *Id.* Exh. B.

Debtor filed this Chapter 7 bankruptcy petition in 2015.[18] The Chapter 7 Trustee, Gene Chambers, filed an adversary complaint to determine the extent of the estate's interest in the Properties and to recover the alleged fraudulent transfers.[19] Goshen later acquired the right to prosecute this adversary proceeding in the Chapter 7 Trustee's place and filed its Motion for Summary Judgment seeking to avoid the alleged fraudulent transfers of the Properties.[20]

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] The moving party must establish the right to summary judgment.[22] A "material" fact is one that "might affect the outcome of the suit under the governing law."[23] A "genuine" dispute means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[24] Once the moving party has met its burden, the nonmovant must set forth

---

[18] Doc. No. 1. in Main Case 6:15-bk-01838, filed March 4, 2015.

[19] Doc. No. 1 in Adversary Proceeding 6:16-ap-00013. Debtor and her husband answered the complaint. Jill Altier and Jennifer Sandman also answered the complaint. Doc. No. 29 in Adversary Proceeding 6:16-ap-00013. Grande Legacy never answered the complaint, so the Court entered a default against it. Doc. Nos. 30, 31, 32. Grande Legacy belatedly filed an answer to the Complaint in July, and the Trustee filed a Motion to Strike that answer. Doc. Nos. 36, 37. The Court granted the Trustee's Motion to Strike and denied a Motion for Reconsideration of its Order granting the Motion to Strike. Doc. Nos. 40, 43, 64. Grande Legacy again belatedly tried to file two answers to the Complaint. Doc. Nos. 46, 49.

[20] Earlier in the case, the Chapter 7 Trustee and the Debtor entered into a compromise that would have resolved all pending issues between them. Doc. No. 91 in Main Case 6:15-bk-01838. The compromise provided the Debtor would pay monies up front to the Trustee and then execute an insurable mortgage in favor of the Trustee on the Properties. *Id.* Goshen objected to the compromise because it offered the Trustee a better deal for the Properties, all of the Trustee's interest in Grande Legacy, and all of the Trustee's claims against third parties. Doc. No. 96 in Main Case 6:15-bk-01838. The Court instructed the Parties to submit bids and counterbids for these assets, and then the Court would conduct an open-court auction to determine the best and highest bid. Doc. No. 105 in Main Case 6:15-bk-01838. Goshen and the Debtor's husband filed bids, and the Trustee filed a comparison of the bids. Doc. Nos. 103, 113, 115 in Main Case 6:15-bk-01838. The Court held the auction in which Goshen was the successful bidder and paid $185,000 for the estate assets. Doc. No. 117 in Main Case 6:15-bk-01838. The Court ordered the Trustee to transfer the estate interests to Goshen and deliver deeds to Goshen for the Trustee's interest in the Properties. Doc. No. 123 in Main Case 6:15-bk-01838. The transfer was completed (Doc. No. 122, Exh. C), and Goshen became the 100% owner of Grande Legacy (Doc. No. 122, Exhs. C, D). Because Goshen purchased all of the Trustee's interest in all remaining claims, Goshen was substituted as the party plaintiff in the adversary proceeding. Doc. Nos. 54, 60.

[21] Fed. R. Civ. P. 56(a) is incorporated into the Bankruptcy Code by Fed. R. Bankr. P. 7056.

[22] *Fitzpatrick v. Schlitz (In re Schlitz)*, 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986).

[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011).

[24] *Anderson*, 477 U.S. at 248.

facts showing there is a genuine issue for trial.[25] In determining entitlement to summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[26]

Goshen seeks summary judgment on Counts VIII and XIII brought under Florida's Uniform Fraudulent Transfer Act, "which provide[s] for the avoidance of constructively fraudulent transfers made within four years of the petition date."[27] Florida's constructive fraudulent transfer statute is "analogous in form and substance" to the Bankruptcy Code's section on constructive fraudulent transfers.[28] The crux of both tests is whether the Debtor received reasonably equivalent value for the transfer.[29] Here, Goshen must establish by a preponderance of the evidence that the Debtor received less than reasonably equivalent value for transferring the Properties.[30]

Under Florida law, a transfer is constructively fraudulent where: (1) Debtor transferred an interest in property; (2) Debtor made that transfer without receiving "reasonably equivalent value" in exchange; and (3) Debtor was "insolvent at the time of the transfer or became insolvent as a result of the transfer."[31] Goshen need not prove the Debtor acted with an actual intent to defraud.[32] "[C]onstructive fraud claims are based on the transferor's financial condition at the

---

[25] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 10 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
[26] *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).
[27] *Luria v. Blue Cross Blue Shield of GA, Inc. (In re Taylor, Bean & Whitaker Mortg. Corp.)*, No. 3:09-BK-7047-JAF, 2012 WL 2369342, at *3 (Bankr. M.D. Fla. Mar. 22, 2012).
[28] *PSN Liquidating Trust v. Intelsat Corp. (In re PSN USA, Inc.)*, No. 02-11913-BKC-AJC, 2011 WL 4031147, at *4 (Bankr. S.D. Fla. Sept. 9, 2011), subsequently aff'd, 615 F. App'x 925 (11th Cir. 2015).
[29] *Id.*; *Tolz v. Miller (In re Todd)*, 391 B.R. 504, 508 (Bankr. S.D. Fla. 2008) ("The pertinent factors for constructive fraud under Fla. Stat. § 726.106(1), the statute relied upon in … the adversary complaint, are identical to those in 11 U.S.C. § 548(a)(1)(B).").
[30] *Langdale Capital Assets, Inc. v. Woodard (In re Berkman)*, 517 B.R. 288, 300 (Bankr. M.D. Fla. 2014).
[31] *Id.* (citing Fla. Stat. § 726.106(1)).
[32] *Estate of Juanita Jackson v. General Elec. Capital Corp. (In re Fundamental Long Term Care, Inc.)*, 507 B.R. 359, 380 (Bankr. M.D. Fla. 2014).

time of the transfer and the adequacy of consideration for the transfer."[33] Courts conduct a two part test to decide whether the Debtor received reasonably equivalent value for the suspect transfer.[34] First, courts question whether the Debtor received value; second, courts question whether that value was reasonably equivalent to whatever the Debtor gave up.[35] "The determination of reasonably equivalent value should be made on a case by case basis."[36] The Florida fraudulent transfer statute also provides definition for "insolvency." Under § 726.103(2), "[a] debtor who is generally not paying his or her debts as they become due is presumed to be insolvent."[37]

The analysis here is straight forward and uncontested. Debtor transferred valuable property for no consideration when she was not paying debts due to Suntrust and Goshen's predecessor—first in 2012 first and again in 2013—within four years before the petition date. Goshen's predecessor's claim arose before the transfer was made.

Debtor received less than reasonably equivalent value for transferring the Properties. Debtor gave the Altier Family Trust the deeds to the Properties perhaps for $10 and undefined "other valuable considerations."[38] Debtor and her husband then purportedly transferred the Properties to Grande Legacy again for perhaps $10 and undefined other "valuable considerations."[39] The record shows the Properties had a much greater value at the time of transfers.[40] Debtor produced no information or documentation showing she received more than

---

[33] *Id.*
[34] *Yip v. Connedz Corp. (In re Gomez)*, No. 13-22713-BKC-AJC, 2016 WL 6783310, at *5 (Bankr. S.D. Fla. Nov. 11, 2016) (internal citations omitted).
[35] *Id.* (internal citations and quotations omitted) (conducting an analysis under the Bankruptcy Code's fraudulent transfer law).
[36] *Bakst v. Clarkston (In re Clarkston)*, 387 B.R. 882, 888 (Bankr. S.D. Fla. 2008).
[37] Fla. Stat. § 726.103(2).
[38] Doc. No. 122, Exhs. I, J, K, L.
[39] *Id.*
[40] Doc. No. 122, Exh. P.

the price stated on the deed other than the stock certificate, which she stated she could not value.[41]

Debtor was legally insolvent when the transfers were made. Debtor failed to pay the mortgage on her home after November 1, 2011. Debtor owes about $325,000 on the home mortgage. In 2012, Suntrust obtained an over $1 million judgment against the Debtor and other parties stemming from a personal guarantee on a commercial loan to the Debtor's family business. This judgment was entered, at least in part, because the Debtor did not pay Suntrust payments as they became due under the commercial loan.[42] Debtor generally was not paying her debts as they became due when the transfers occurred and is presumed insolvent. Debtor submitted no response or evidence in opposition to this point.

Construing the facts most favorably to the Debtor, Goshen has satisfied all elements of a constructive fraudulent transfer claim under Fla. Stat. § 726.106(1). Debtor produced no facts or evidence showing any dispute on any element of the constructive fraudulent transfer claim. Debtor likely made these transfers of the Properties to keep her creditors from getting them, but her intent is irrelevant. The facts undisputedly show she made the transfers for less than reasonably equivalent value at a time she was insolvent. Goshen is entitled to judgment as a matter of law on Counts VIII and XIII of the Complaint. The transfers of the Properties are avoided.[43] All interest in the Properties will return to the estate for further administration. Goshen shall receive the deeds for the Properties based on its agreement with the Chapter 7 Trustee.

---

[41] Doc. No. 122, Exhs. M, N, O.
[42] Doc. No. 122, Exh. G.
[43] Fla. Stat. § 726.108(1)(a).

A separate partial final judgment consistent with this memorandum opinion shall be entered simultaneously.

###

Attorney, Justin Luna, is directed to serve a copy of this memorandum opinion on all interested parties and file a proof of service within three days of entry of the opinion.